IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

EDDIE BRILEY
ADC # 116921                                                    PLAINTIFF

V.                      5:04CV00410 SWW/HDY

KENNETH ELLIS *et al.*                                          DEFENDANTS

## PROPOSED FINDINGS & RECOMMENDATION

A trial was held in this case before the Court on May 16, 2005. Following the presentation of testimony by the parties and witnesses, and submission of exhibits, the Court enters the following findings and recommendation.

### I. Facts

Plaintiff, who is currently confined at the East Arkansas Regional Unit, has been in the custody of the Arkansas Department of Correction since 2000. He filed this *pro se* 42 U.S.C. § 1983 Complaint alleging that he was subjected to excessive force and denied medical care for his injuries. Plaintiff also alleged state law claims of "assault, battery and negligence." Defendants are correctional officers and Arkansas Department of Correction officials at the Varner Super Max Unit, where the events in question occurred, and at the East Arkansas Regional Unit.

According to Plaintiff, he was moved from 5 Barracks to 4 Barracks on April 21, 2004, by Defendants Ellis and Gardner. During the move, he was told to pack his belongings, and Defendants Ellis and Gardner brought him a "dirty, stinky" mattress that he rejected. When he refused to take

1

the mattress, he was ordered to "catch the cuffs" so that the mattress could be brought into his cell.

Lt. Kenneth Ellis testified for the defense that he had been instructed by Captain Griswald to move Plaintiff. When he returned to Plaintiff's cell with the rest of his belongings, Ellis "asked him over and over again" to receive the mattress. Plaintiff, however, threatened to "shank" them, so he was instructed to "catch the cuffs." Ellis stated that he warned Plaintiff that if he did not catch the cuffs, he would be sprayed. Plaintiff then moved to the back of the cell and wrapped his face in a towel, still refusing to submit to the handcuffs. Plaintiff was then sprayed, and, when he again refused to catch the cuffs, was sprayed a second time.

According to Defendant Ellis, when he was moving Plaintiff to the isolation shower, Plaintiff was "trying to fall" down the stairs, attempting to fight Ellis and get away. Defendant Daryl Gardner testified that when he was moving Plaintiff from his cell to the isolation shower after the spraying, Plaintiff "broke loose" twice during the trip down the stairs and he had to ask Defendant Corcolis to assist in the escort. When Plaintiff refused to get up, Ellis carried him to the isolation shower. According to policy, he notified the infirmary by radio that Plaintiff had been sprayed and took him to the isolation shower so that he could wash his face and be checked by a nurse. Contrary to Plaintiff's assertions, Ellis testified that the isolation shower was not large enough for Plaintiff to have been left lying on the floor, that the restraints were removed in the shower so that Plaintiff could wash, that he was examined by Nurse Thomas and found to be uninjured, and Plaintiff walked back to his cell on his own. Plaintiff was written a major disciplinary for the offense.

## II. Analysis

Here, after listening to all the testimony and drawing appropriate inferences based on the credibility of the parties and their witnesses, the Court is persuaded that Plaintiff has not shown that

the force used against him was excessive. In fact, Plaintiff concurred with defense counsel that he could have avoided the entire scenario simply by "catching the cuffs" as he was directed to do. Plaintiff was issued a direct order, multiple times, which he disregarded, as he plainly acknowledged at the hearing.

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in good faith to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000)(citations omitted). Relevant factors include the need for force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *Id*. Based on the testimony adduced at the hearing, Defendants Ellis, Gardner and Corcolis exercised a reasonable amount of force to maintain or restore discipline.

As to Plaintiff's contentions that he was denied adequate medical attention by Defendant Thomas, he presented no evidence or testimony that she failed to check his condition. Defendants Ellis and Gardner both testified that she was notified that he had been sprayed, she came to the isolation shower, and that she observed his condition. In his Amended Complaint (docket entry #41) Plaintiff alleged, essentially, only that Defendant Thomas delayed in treating him. Plaintiff has presented no evidence of any sort that would support a showing of a physical injury sustained as a result of the failure to provide medical care. A plaintiff's self-diagnosis alone cannot establish that he suffers from a serious medical need, when the medical evidence does not support his self-diagnosis. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez v. Petters*, 111 F.3d 1364, 1372 (7th Cir.1997).

When an inmate alleges that treatment delay is the constitutional deprivation, the objective seriousness of the deprivation should be measured by reference to the delay's effect. *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). The inmate must put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Id. (citing Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir.1994)); *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir.1995). Specifically, the inmate must present "verifying medical evidence . . . that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis." *Reece*, 60 F.3d at 491; *see Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir.1994). Here, again, because Plaintiff has presented no objective medical evidence in support of his claims, nor even any concrete allegations regarding the nature of the injury allegedly sustained as a result of the denial of treatment, the undersigned recommends that Plaintiff's claims against her be dismissed as well.

Plaintiff also alleged that Defendants Rankin, Tillman, Hampton, Malone, and Morris failed to intervene to protect him. However, the evidence presented failed to show either a failure to intervene or a need to protect. Defendant Stephanie Rankin testified that she was "feeding chow" at the time of the events described above and did not intervene, because it appeared that Ellis, Gardner and Corcolis had the situation under control and the other inmates would have objected to an interruption in chow. She added that she did see Plaintiff on the ground, briefly, then he was picked up and carried out of the barracks.

Defendant Tillman, who was a CO-I when she was employed at the Arkansas Department of Correction, testified that she was in Isolation 4 on that day, but she came in only after Plaintiff had been placed in the isolation shower and didn't recall much else about the events, other than that the nurse was there. Defendant Willie Hampton, the mental health counselor, testified that he came

4

into the cell block and saw Plaintiff being moved from the third tier, then observed Plaintiff on the floor before guards picked him up and carried him out. He did hear someone say "Get up," then he turned and saw Plaintiff on the floor, but he did not hear Plaintiff ask for medical help. According to Hampton, he was on the far opposite end of the cellblock at the time, but later that day Plaintiff informed him he would be filing a lawsuit.

Defendant Valencia Morris, who was responsible for something called "cell alignment" at the time of the events, testified that she was not present in the barracks or the isolation room and didn't recall much of anything about Plaintiff. Defendant Lasaundra Malone, who is a lieutenant, similarly testified that, while the security log shows she was present in the area, she didn't recall anything about the alleged events.

As to Defendants Evans, Rankin, Malone, Morris, Hampton, and Tillman, Plaintiff's claims should be dismissed because they clearly had no involvement whatsoever in the alleged events. Most of these Defendants seemed plainly baffled by their inclusion in the lawsuit, and Plaintiff provided no testimony or argument whatsoever that would support a finding that they violated his constitutional rights in any fashion. Plaintiff's claims against these Defendants should be dismissed as frivolous.

### III. State Law Claims

Plaintiff has also alleged claims, such as negligence, founded on state law. A federal district court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over claims arising under state law after dismissal of the claim(s) over which the court has original jurisdiction. In addition, 28 U.S.C. § 1367(d) tolls the limitations period for state-law claims during the pendency of a federal lawsuit, if the statute of limitations had not expired on such claims before

5

the plaintiff filed a complaint in federal court. 28 U.S.C. § 1367(d) states in pertinent part: "The period of limitations for any claim asserted under subsection (a) ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." The tolling provision of section 1367(d) provides "assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court." *Jinks v. Richland County*, 538 U.S. 456, 464, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003). Consequently, the dismissal of the plaintiff's claims based on state law will be without prejudice.

## IV. Pending Motions

As to the discovery issues that Plaintiff has raised in his First Set of Interrogatories (docket entry #32) and his Second Set of Interrogatories (docket entry # 42), which he filed as a "Motion for Order Compelling Disclosure or Discovery," Plaintiff sought the following: a copy of the "Use of Force" policy, information concerning the investigation of the incident; any security camera footage from the relevant areas; security logs; and inmate rosters. In Response to Plaintiff's request for an Order compelling discovery, Defendants provided to the Court a copy of their response to Plaintiff (docket entry #76), noting that "While Plaintiff may not be happy with the responses to discovery, Defendants properly responded to same."

In that response, Defendants provided to Plaintiff only a list of the designated "problem-solvers" at the East Arkansas Regional Unit and a copy of the Varner Super Max Unit policies, objecting to Plaintiff's requests for security camera operating policies, the use of force investigation policy, the inmate roster, the security log, and a diagram of the Varner Super Max Unit including the location of security cameras. Defendants, quite properly, objected to these discovery requests on the grounds that it was an unreasonable threat to institutional security to provide this information to

Plaintiff. Plaintiff is not entitled to these materials and his pending motions seeking the Court to compel their release to him (docket entries #80 and #88) should be denied. As to Plaintiff's request that the Court view the security camera footage of the relevant area and time, Defendants have responded that the security cameras were not in use at that time. The Court has no particular reason to doubt this response, offered in good faith by officers of the Court. Plaintiff's requests as to any surveillance video should be denied as well.

Also pending are Plaintiff's Motion for Order for Service (docket entry #79), for "Service of Summons and Complaint on K. Thomas, not D. Thomas" (docket entry #92), and for leave to amend his complaint to correct the spelling of Defendant Gardner's name (docket entry #93). In light of the foregoing, Plaintiff's Motions should be denied as moot.

## V. Conclusion

Accordingly,

IT IS, THEREFORE, RECOMMENDED that

1) Plaintiff's claims under 42 U.S.C. § 1983 against Defendants be DISMISSED WITH PREJUDICE, and that Plaintiff's state law claims be DISMISSED WITHOUT PREJUDICE;

2) Plaintiff's discovery motions (docket entries # 80 and #88) be DENIED; and

3) Plaintiff's pending Motion for Order for Service (docket entry #79), for "Service of Summons and Complaint on K. Thomas, not D. Thomas" (docket entry #92), and for leave to amend his complaint to correct the spelling of Defendant Gardner's name (docket entry #93) be DENIED AS MOOT.

IT IS SO RECOMMENDED this 14 day of June, 2005.

_____
UNITED STATES MAGISTRATE JUDGE